NOT FOR PUBLICATION                    [Docket Nos. 43, 49, & 50]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE COMPANY,

               Plaintiff,                    Civil No. 07-2989 (RMB)

    v.

                          **OPINION**

SOUTH STATE, INC., et al.,

              Defendants.

APPEARANCES:

Kenneth M. Portner, Esq.
Weber, Gallagher, Simpson, Stapleton, Fires & Newby, LLP
2000 Market Street, 13th Floor
Philadelphia, PA 19103

    Attorney for Plaintiff Pennsylvania National Mutual Casualty
    Insurance Company

Amy M. Trojecki, Esq.
Glenn Anthony Harris, Esq.
Jennifer L. Sova, Esq.
Ballard, Spahr, Andrews & Ingersoll
Plaza 1000, Main Street, Suite 500
Voorhees, NJ 08043-4636

    Attorneys for Defendant and Third-Party Plaintiff South
    State, Inc.

Michael Raymond Mignogna, Esq.
Stephen J. Defeo, Esq.
Brown & Connery LLP
360 Haddon Avenue
Westmont, NJ 08108

Attorneys for Defendant Geraldine D. Durham

Richard J. Williams , Jr., Esq.
Mcelroy, Deutsch, Mulvaney & Carpenter, Llp
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075

Attorney for Third-Party Defendant New Jersey Manufacturers
Insurance Company

Jared T. Hay, Esq.
Kellie Ann Allen, Esq.
Laurence Ivan Gross, Esq.
Salmon, Ricchezza, Singer & Turchi LLP
1700 Market Street, Suite 3110
Philadelphia, PA 19103

Christine D. Steere, Esq.
Mcdonnell & Associates PC
Metropolitan Business Center
860 First Avenue, Suite 5B
King of Prussia, PA 19406

Attorneys for Third-Party Defendant Providence Washington
Insurance Company

**BUMB**, United States District Judge:

This matter comes before the Court upon three motions for

summary judgment.  In this action, three insurance providers,

Pennsylvania National Mutual Casualty Insurance Company ("Penn

National"), New Jersey Manufacturer's Insurance Company ("NJM"),

and Providence Washington Insurance Company ("Providence

Washington"), ask this Court to declare that they have no duty to

defend or indemnify their insured, South State, Inc. and South

State Incorporated Dredge and Plant (collectively, "South

2

State"), in a state-court lawsuit (the "Underlying Action").  For the reasons set forth herein, the Court grants the motions for summary judgment by Providence Washington [Docket No. 43] and South State [Docket No. 50], and denies the motion for summary judgment by NJM [Docket No. 49].

**I. Factual Background**

    **A. The Underlying Action**

On February 12, 2007, Geraldine D. Durham, administratrix of the Estate of Elwood Durham (the "Durham Estate"), filed a lawsuit against South State and Soil Remediation Technology, LLC ("SRT"), in the Superior Court of New Jersey, Camden County.  The lawsuit arose from a March 15, 2005 accident (the "Durham Accident") that occurred at South State's sand and gravel plant, in which Elwood Durham was thrown from a work-barge that capsized while he was trying to recover an anchor that had broken away from a dredging machine.  Mr. Durham suffered serious injuries, which, according to the Complaint, led to his death on March 24, 2005.  Mr. Durham was employed by SRT, a gravel-mining company that operated at the South State site.[1]

Penn National, South State's primary insurer, and NJM, South

---

[1] It is contended that, although legally distinct corporate entities, South State and SRT actually operated as a single enterprise.  (P.W. Mot. Br. [Docket No. 43] at 8.)  This is a disputed question of fact.

State's provider of workers compensation and employers' liability
insurance, both agreed to defend South State in the Underlying
Action.  Before assuming South State's legal representation, both
insurance providers issued notices purporting to reserve their
right not to indemnify South State for damages that might be
awarded in the Underlying Action.

**B. The Declaratory Judgment Action**

On June 27, 2007, Penn National filed this lawsuit against
South State, SRT, and the Durham Estate in federal district court
seeking a declaratory judgment that Penn National has no duty to
defend or indemnify South State or SRT in the Underlying Action.
Because SRT was not seeking defense or indemnification from Penn
National, it filed a motion to dismiss the claims against it
pursuant to Federal Rule of Civil Procedure 12(b)(6), which this
Court granted on February 19, 2008.  [Docket No. 30.]  Asserting
a right to indemnification, South State joined NJM and Providence
Washington, secondary insurance providers to South State, as
third-party defendants.

The Court considers herein motions for summary judgment
filed by Providence Washington against South State [Docket No.
43], NJM against South State [Docket 49], and South State against
Penn National [Docket No. 50].

## II. Legal Standard

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "At the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  "In making this determination, a court must make all reasonable inferences in favor of the non-movant."  Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)).  However, "the party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading'; its response, 'by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'"  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Fed. R. Civ. P. 56(e)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. Discussion

### A. Indemnification by Penn National

South State's motion for summary judgment contends that Penn National must indemnify South State, because, after assuming South State's legal defense in the Underlying Action, Penn National may not now deny coverage. Penn National counters that it may deny coverage, because it issued a "reservation of rights letter," a notice purporting to reserve Penn National's right to deny indemnification while agreeing to defend South State in the Underlying Action.

An insurer is generally obliged to indemnify its insured when it assumes an insured's legal defense. Merchants Indem. Corp. v. Eggleston, 37 N.J. 114, 125-28, 179 A.2d 505 (1962). In such a case, however, the insurer may deny coverage when the insured has consented. Id. At issue here is whether consent may be implied from an insured's acceptance of the insurer's legal representation in light of the insurer's unilateral declaration that it does not intend to indemnify the insured.

The Supreme Court of New Jersey has said that consent may be inferred from an insured's acceptance of representation, "but to spell out acquiescence by silence, the letter [reserving the insurer's right not to indemnify the insured] must fairly inform the insured that the offer may be accepted or rejected." Eggleston, 37 N.J. at 127-28.

6

Penn National asks the Court to expand this narrow consent requirement by inferring an insured's consent from its sophistication and presumed knowledge, even when the insurer does not inform the insured that it may reject the representation. (See P.N. Op. Br. [Docket No. 59] at 6 ("[I]f the insured knows that it has the ability to reject a defense under reservation, the fact that a reservation of rights letter does not advise that it can do so is irrelevant.").)  New Jersey's state courts have not taken this step, and neither does the Court today.

New Jersey courts have held that a reservation of rights letter need not use any particular "exact words," such as "you may 'accept or reject' the offered defense," as long as the letter does not "reflect or even suggest a unilateral decision" by the insurer.  Kaplan v. Harleysville Ins. Co., slip op., No. L-8117-04, 2007 WL 1670888, *4 (N.J. Super. June 12, 2007).  For example, the Appellate Division approved one letter that expressed the insurer's willingness to defend the insured subject to a reservation of rights, because the letter made clear that the representation was contingent upon the insured's acceptance ("[i]f [the insured] accept[s] this reservation"), and also advised the insured to "retain personal counsel . . . ."  Id. at *5.  That case cited another acceptable reservation of rights letter, at issue in Neilson v. American Mutual Liability Insurance Co. of Boston, that included the provision, "'If this

7

is not agreeable to you, we will return the summons and complaint for such action as you think advisable.'" 111 N.J.L. 345, 349 (E. & A. 1933).  While no precise terms of art are necessary to reserve the right not to indemnify an insured, the letter must include some expressed indication that the insured has a choice to accept or reject the representation.[2]

In this case, Penn National sent three letters to South State dated March 15, April 5, and April 9, 2007 -- all of which had substantially the same content -- that declared its intention to defend South State, but purported to reserve its right not to indemnify South State.  The letters say, in relevant part,

> Penn National Insurance will afford coverage and provide a defense for this claim pursuant to the Commercial General Liability policy; however, it does so subject to a reservation of rights under the . . . policy['s] provisions. . . .
> [A] genuine issue exists as to whether the subject policy affords coverage to South State Inc. for the claim of 3/15/05 and Penn National hereby reserves any and all of its rights to modify or amend its coverage position and assert any defenses and disclaimers based upon any of the policy provisions, definitions, conditions or exclusions . . . .
> Please be advised that this is not a denial of coverage, but rather to inform you of a potential

---

[2] Penn National cites only one authority, Kaplan, in support of its contention that reservation of rights letters need not express that the insured has a choice.  Kaplan is a non-precedential opinion in which the insured parties were themselves attorneys, and thus were, the Court noted, "sufficiently sophisticated to understand the meaning and legal effect of [the] reservation of rights [letter]."  2007 WL 1670888, *5.  The insured's sophistication was not dispositive in Kaplan, however, since the reservation of rights letter did, in fact, indicate that the insured could decline the representation.

coverage issue(s). Any actions taken by Penn National Insurance in the investigation of this matter, or in negotiating for a compromise settlement, or in making any settlement, or in defending this claim, or in any other way acting or failing to act, shall not constitute an admission of liability or an admission of coverage.

[Docket No. 59, Ex. F, at 2, 4.] The letters lack any mention, nor even any hint, that South State could opt to reject Penn National's representation. The letters fail even to suggest a possible scenario in which South State might manage its own legal defense. Penn National acknowledges as much, asking this Court to read into the letters the knowledge that a sophisticated insured like South State presumably has. (P.N. Op. Br. [Docket No. 59] at 7.) South State insists that, contrary to Penn National's presumption, its agents did not, in fact, understand that it could decline representation by Penn National. (S.S. Repl. Br. [Docket No. 69] at 3 (quoting Chichura Deposition at 50:11-54-4 [Ex. A]).) For the reasons set forth above, see supra note 2 and accompanying text, the Court need not decide the question of what South State did or should have known. By assuming responsibility for South State's legal defense and failing to notify South State of its option to decline the representation in its reservation of rights letter, Penn National is precluded from refusing to indemnify South State in this matter.

Finally, Penn National insists that it cannot be required to indemnify South State, because the terms of its policy do not

appear to cover this incident.  Since Penn National cannot deny

coverage, however, the Court need not interpret the policy.

<u>Eggleston</u> explained that an insurer

> cannot expect the insured to pay for a judgment when it
> controlled the litigation.  A[n insurance] carrier may be
> more confident of its handling of claims, but an insured
> may with equal conviction prefer the individualized
> attention of his own counsel as against the services
> furnished by an insurer in the mass-handling of
> litigation.  Personal counsel may seize opportunities to
> settle which might be ignored or overlooked by a carrier
> to which the case is just one of a great number. . . .
> For these reasons it would be unfair to permit a carrier
> to control the defense without the consent of the insured
> and then leave the judgment for his payment. . . .
> Control of the defense is coupled with the duty to pay.
> The carrier cannot sever them by its unilateral action.

37 N.J at 511-12.  Once an insurer assumes responsibility for the

legal representation, it does not matter that the policy may not

have required indemnification.  The insurer is nonetheless

precluded from denying coverage.


**B. Indemnification by NJM**

**1. Reservation of Rights**

NJM is not precluded from denying coverage to South State

for the very same reasons that Penn National is.  Like Penn

National's reservation of rights letter, NJM's letter, dated June

11, 2007, details its understanding of the application of its

policy to the Underlying Action, and explains that it "reserves

its right . . . to disclaim any duty to indemnify or defend if

information is ultimately established that shows that the damages

10

sought are either not within the scope of NJM's Policy or otherwise excluded by the exclusion in those Policies." [Docket No. 40, Ex. C, at 6.] But unlike Penn National's reservation of rights letter, NJM's letter clearly states, "At the outset, we advise you that South State is free to accept or reject NJM's offer to defend South State subject to a complete reservation of rights." Id. at 1. For the reasons explained above, see supra Part III.A., this is all that New Jersey law requires to impute consent to an insured that accepts legal representation from its insurer. See Eggleston, 37 N.J. at 127-28; Kaplan, 2007 WL 1670888, *4. NJM is therefore not precluded from denying coverage to South State, subject to the reservation of rights set out in its June 11th letter.

## 2. Coverage by NJM's Policy

Since NJM is not precluded from disclaiming liability, the Court must turn to whether the NJM insurance policy covers South State for the Underlying Action. In support of its motion for summary judgment, NJM argues that its policy does not cover the Underlying Action for two reasons: first, its policy covers only injuries to South State employees, and Mr. Durham, NJM contends, was not a South State employee; and second, if Mr. Durham was a South State employee, recovery by the Durham Estate in the Underlying Action is excluded from the policy as not "permitted

by law."[3]

    The NJM policy provides, in relevant part,

    We will pay all sums [South State] legally must pay as
    damages because of bodily injury to [South State's]
    employees, provided the bodily injury is covered by this
    Employers Liability Insurance.
    The damages [NJM] will pay, <u>where recovery is permitted</u>
    <u>by law</u>, includes damages: . . .
    4. because of bodily injury to <u>[South State's] employee</u>
    <u>that arises out of and in the course of employment</u>,
    claimed against you in a capacity other than as employer.

[Docket No. 49, Ex. G, at 3 (emphasis added).]  It is undisputed
that Mr. Durham was an employee of SRT.  The parties disagree,
however, on whether he can also be considered to have been an
employee of South State, which is the party insured by NJM.

    To determine whether an insurance policy covers a particular
lawsuit, the policy should be compared with the claims asserted
in the underlying complaint, resolving doubts in favor of the
insured.  <u>Danek v. Hommer</u>, 28 N.J. Super. 68, 77, 100 A.2d 198
(1953).  NJM asks the Court to rule as a matter of law that Mr.
Durham cannot be considered to have been a South State employee
for purposes of the Underlying Action, because the Complaint does
not characterize him as a South State employee.  (NJM Mot. Br.
[Docket No. 49] at 7-8.)  NJM argues that this Court's inquiry
should begin and end with the Complaint.

    The Supreme Court of New Jersey has rejected this approach.

---

    [3] The parties do not dispute that the first section of the
NJM policy, which addresses coverage for workers compensation
claims, does not apply to this case.

An insurer's liability "is triggered not only by the allegations in the complaint, but <u>by the later discovery of relevant facts</u>," the Court concluded, quoting hornbook law for the proposition that, "The insurer cannot safely assume that the limits of its duties to defend are fixed by the allegations a third party chooses to put into his complaint, <u>since an insurer's duty is measured by the facts</u>." <u>SL Industries, Inc. v. American Motorists Ins. Co.</u>, 128 N.J. 188, 199, 607 A.2d 1266 (1992) (quoting J.A. Appleman, 7C Insurance Law and Practice § 4683, at 56 (Berdal ed. 1979)) (emphasis added).  In other words, the facts giving rise to the claims asserted in the complaint, and not the "fortuity of how the plaintiff, a third party, chooses to phrase the complaint," determine an insurer's liability.  <u>Id.</u>

Whether Mr. Durham was an employee of South State is a question of fact, beyond the scope of summary judgment. Providence Washington argues in support of its summary judgment motion that although South State and SRT are legally separate corporate entities, South State agents hired, supervised, and fired SRT employees.  (P.W. Mot. Br. [Docket No. 43] at 8.) Further, Providence Washington asserts that SRT's corporate accounts were maintained by South State, and South State issued paychecks to its employees from those accounts.  <u>Id.</u>  These facts, if true, are relevant to a determination of whether Mr. Durham was an employee of South State.  Since there exists a

genuine issue of material fact as to whether Mr. Durham was an employee of South State, summary judgment cannot be granted to NJM on this ground.

Finally, NJM argues that even if Mr. Durham were a South State employee, its policy would not cover the Underlying Action, because recovery would not be "permitted by law." According to NJM, New Jersey law permits employees to recover in civil actions against their employers only for intentional torts. (NJM Mot. Br. [Docket No. 49] at 10.) Since the Durham Estate does not allege any intentional torts in the Underlying Action, NJM argues that recovery against South State would not be "permitted by law" and is therefore not covered by its policy. Id.

First, assuming, arguendo, that NJM's interpretation of this clause in its policy is correct, the Underlying Action would be excluded from NJM's policy only if Mr. Durham was found to be a South State employee. As explained above, this question of fact is beyond the scope of summary judgment.

Second, the Court doubts NJM's interpretation of this clause, which is, at best, ambiguous. The Court sees at least two plausible interpretations of the NJM policy that favor South State in the resolution of this motion for summary judgment. One interpretation, suggested by South State, is that the clause, "where recovery is permitted by law," merely modifies a list of examples of some of the sorts of claims NJM will cover; the

14

policy does not state that it covers <u>only</u> actions where recovery is permitted by law.  A second interpretation would take the clause, "where recovery is permitted by law," to mean "where recovery is permitted by the court before which recovery is sought."  Under this interpretation, it is for the state court to permit or bar recovery, not this Court, since the Durham Estate seeks recovery against South State in state court.  Because doubts as to the meaning of ambiguous provisions are resolved in favor of the insured, <u>Voorhees v. Preferred Mutual Ins. Co.</u>, 128 N.J. 165, 175 (1992), this obtuse clause does not absolve NJM of liability in this proceeding.

Third, whether recovery against South State is permitted by law is a question more appropriate for the state court adjudicating the Underlying Action anyway.  To decide this question, the Court would need to pass judgment on South State's liability to the Durham Estate, which is the ultimate question before the state court.  For the reasons set forth above, and for the reason of judicial comity, the Court declines to reach this question.  <u>Accord</u> <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 13 (1987) (holding that federal courts may abstain from granting declaratory relief that implicates an ongoing state civil proceeding when important state interests are involved).

In summary, although NJM is not precluded from disclaiming liability, the Court denies its motion for summary judgment.

**C. Indemnification by Providence Washington**

In support of its motion for summary judgment, Providence Washington contends that it need not indemnify South State, because the Underlying Action is not covered by its insurance policy.  Unlike the summary judgment motions of South State and NJM, there is no dispute as to whether Providence Washington is precluded from disclaiming liability, because Providence Washington has not assumed South State's legal defense, nor are there fact-disputes that exceed the scope of summary judgment. The Court must therefore turn to the provisions of Providence Washington's policy to determine if South State is covered in this instance.

The duties of an insurer to an insured are to be determined by the contract of insurance and the parties' objectively reasonable expectations in entering the contract.  SL Indus. v. Federal Ins. Co., 128 N.J. 188, 198-99, 607 A.2d 1266 (1992).  An insurance contract is often viewed as a contract of adhesion. Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 175 (1992). Its terms, when ambiguous, are to be construed against the drafter: the insurance company.  Id.  Moreover, the sophistication disparity between the insurance company and the average insurance policy purchaser counsels against blind adherence to the strict rules of contract interpretation.  Id.

16

However, courts "should not write for the insured a better policy of insurance than the one purchased." Voorhees, 128 N.J. at 175 (quoting Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990)).

Here, Providence Washington's insurance policy excludes injuries arising out of the use of "watercraft," and therefore Providence Washington argues that the policy does not cover South State for the Underlying Action, which arose from an incident on a work-barge (or pontoon).  The policy provides,

> This insurance does not apply to: . . .
> f. "Bodily injury" . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . watercraft owned or operated by or rented or loaned to any "Insured."  Use includes operation and "loading" or "unloading."
> This exclusion does not apply to:
> (1) Watercraft while ashore on premises "you" own or rent;
> (2) Watercraft "you" do not own that are:
>     (a) less than 26 feet long; and
>     (b) Note being used to carry persons or property for a charge.

[Docket No. 43, Ex. C, at 5.]  It is not disputed that the two exceptions to the policy's general watercraft exclusion do not apply in this case.  The parties do dispute, however, whether the general watercraft exclusion applies.  Resolution of this dispute turns on whether the work-barge on which the Durham Accident occurred is within the meaning of "watercraft" contemplated by the insurance policy.

Although the policy does not itself define "watercraft," South State (the non-moving party) offers the dictionary

definition, "craft for water transport." (S.S. Op. Br. at 7 [Docket No. 61] (citing Webster's Ninth New Collegiate Dictionary 1332 (1985)).) Providence Washington accepts that this definition represents the term's plain meaning, but contends that the work-barge was indeed a craft for water transport. (P.W. Rep. Br. [Docket No. 67] at 2.)

The Court agrees with Providence Washington. South State used the work-barge to transport workers around a pond to complete work functions. Unlike a floating dock, houseboat platform, or other stationary pontoon, the work-barge was, inter alia, a vehicle used to enable mobility ("transport"). South State contends that the barge was used as a piece of equipment for mining operations; it was not, like most watercraft, a vessel for extensive travel in large rivers and oceans. Construing the definition narrowly, as South State urges, large cruise-ships and military aircraft-carriers would likewise not be considered "watercraft," since they are used for purposes other than transportation (namely, housing people and aircraft) and, by virtue of their size, they cannot navigate most traveled waterways. The Court is unwilling to find ambiguity where none exists. See Int'l Union, United Auto. v. Mack Trucks, Inc., 917 F.2d 107, 111 (3d Cir. 1990) (holding that ambiguity exists if "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage").

Although a work-barge is not used in the same way as most other watercraft, and although it serves important mining functions in addition to water transport, it is nonetheless clearly within the meaning of "watercraft" contemplated by the insurance policy.

South State argues that, even if the Underlying Action is excluded from coverage pursuant to the watercraft provision, Providence Washington should nonetheless indemnify South State, because the policy was intended to be an "umbrella liability policy," that is, it was intended to insure South State for those cases not covered by South State's primary insurance provider, Penn National.  Accord Bryan Construction Co., Inc. v. Employers Surplus Lines Ins. Co., 60 N.J. 375, 377 (1972).  South State contends that because it intended Providence Washington to provide umbrella coverage, it reasonably expected "that all liability associated with its operations would fall under the umbrella of the Providence policy."  (S.S. Op. Br. [Docket No. 61] at 7-8.)

This sweeping expectation finds no support in New Jersey case-law.  Bryan Construction, on which South State relies, stands for the proposition that ambiguous terms within an umbrella policy should be construed in favor of an insured.  60 N.J. at 377.  The expectation that Providence Washington would cover all liability associated with its operations, in the face of a detailed contract of insurance with numerous coverage

exclusions, is not reasonable, because it presumes that the policy's coverage exclusions have no effect whatsoever.  (Indeed, more than being unreasonable, this expectation is perplexing.)[4] Although courts must interpret insurance policies liberally consistent with the expectations of the insured, they must not "write for the insured a better policy . . . than the one purchased." Voorhees, 128 N.J. at 175 (quoting Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990)).  The Court will not excise from the Providence Washington policy a clear exclusion merely because South State claims the exclusion was not within its expectations.  Since the Underlying Action falls plainly within an exception to the Providence Washington policy, Providence Washington will not be required to indemnify South State.[5]

## IV. Conclusion

For the reasons set forth herein, the Court grants the motions for summary judgment by Providence Washington [Docket No.

---

[4] The Court is troubled by South State's claim that the watercraft exclusion, which is clearly enumerated within the Providence Washington policy, was not within its expectations. An insured that purchases an insurance policy clearly excluding coverage for incidents arising from watercraft use cannot seriously expect that the policy will cover "all liability associated with its operations," as South State claims to have expected.

[5] The Court need not reach the other bases for exclusion argued by Providence Washington.

20

43] and South State [Docket No. 50], and denies the motion for summary judgment by NJM [Docket No. 49].  An appropriate order will issue this date.


                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge
Dated: December 3, 2008